UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LYNNEESA M.,

                Plaintiff,                     **DECISION AND ORDER**

        v.                                       1:20-CV-00971 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

## INTRODUCTION

Represented by counsel, plaintiff Lynneesa M. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB"), supplemental security income ("SSI"), and child's insurance benefits ("CIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 16; Dkt. 18), and Plaintiff's reply (Dkt. 19). For the reasons discussed below, the Commissioner's motion (Dkt. 18) is granted and Plaintiff's motion (Dkt. 16) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on August 19, 2016, and protectively filed her applications for CIB and SSI on September 26, 2016. (Dkt. 11 at 16, 187, 202).[1] In her applications, Plaintiff alleged disability beginning April 21, 2016. (*Id.* at 16, 399, 401). Plaintiff's applications were initially denied on January 26, 2017. (*Id.* at 16, 219-34). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Kathleen Scully-Hayes on April 30, 2019. (*Id.* at 148-86). On July 3, 2019, the ALJ issued an unfavorable decision. (*Id.* at 13-34). Plaintiff requested Appeals Council review; her request was denied on May 27, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-10). This action followed.

## LEGAL STANDARD

**I.     District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or

medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff had not attained 22 years of age as of April 21, 2016, the alleged

onset date. (Dkt. 11 at 18).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since April 21, 2016, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of depressive disorder, anxiety disorder, and post-traumatic stress disorder. (*Id.* at 19).  The ALJ further found that Plaintiff's medically determinable impairment of anemia was non-severe. (*Id.* at 22).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*).  The ALJ particularly considered the requirements of Listings 12.04, 12.06, and 12.15 in reaching this conclusion. (*Id.* at 19-20).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [Plaintiff] can understand, remember, and carry out simple, routine, and repetitive instructions.  She can tolerate occasional superficial interaction with supervisors and coworkers, and occasional to no interaction with the public.  [Plaintiff] requires low-stress jobs, defined as no production-rate pace work, only occasional decision-making responsibilities, and only occasional changes in job setting.

(*Id.* at 20-21).

At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 26).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of janitor, warehouse worker, and

housekeeping cleaner. (*Id.* at 27-28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from April 21, 2016, through the date of the decision. (*Id.* at 28).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, to remand this matter to the Commissioner, arguing that: (1) the ALJ erred in considering the criteria of Listings 12.04 and 12.15; (2) the ALJ and the Appeals Council erred in assessing the opinion of nurse practitioner ("NP") Katie Rauber; and (3) the ALJ failed to properly explain her assessment of the opinion of consultative examiner Dr. Brett T. Hartman. The Court has considered these arguments and, for the reasons discussed below, finds them without merit.

### A. The ALJ's Consideration of Listings 12.04 and 12.15

"Plaintiff has the burden of proof at step three to show that [his] impairments meet or medically equal a Listing." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 272 (N.D.N.Y. 2009), *adopted*, 614 F. Supp. 2d 252 (N.D.N.Y. 2009). "To match an impairment in the Listings, the claimant's impairment must meet all of the specified medical criteria of a listing." *Loescher v. Berryhill*, No. 16-CV-300-FPG, 2017 WL 1433338, at *3 (W.D.N.Y. Apr. 24, 2017) (internal quotation and citation omitted). "If a claimant's impairment manifests only some of those criteria, no matter how severely, such impairment does not qualify." *Rockwood*, 614 F. Supp. 2d at 272 (internal quotations and citations omitted).

An ALJ is required to provide an explanation "as to why the claimant failed to meet or equal the Listings, '[w]here the claimant's symptoms as described by the medical evidence appear to match those described in the Listings.'" *Rockwood*, 614 F. Supp. 2d at

- 6 -

273 (alteration in original) (quoting *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002)). "[I]t is the ALJ's responsibility . . . to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review," and "[t]he Court cannot . . . conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Loescher*, 2017 WL 1433338, at *3 (internal quotations and citations omitted) (second alteration in original). An ALJ's failure to provide an analysis of a claimant's symptoms with respect to the Listings can justify remand. *Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *3 (W.D.N.Y. June 4, 2019) (citing *Torres v. Colvin*, No. 14-CV-479S, 2015 WL 4604000, at *4 (W.D.N.Y. July 30, 2015) and *Cherico v. Colvin*, No. 12 Civ. 5734(MHD), 2014 WL 3939036, at *28 (S.D.N.Y. Aug. 7, 2014)). However, "[a]n ALJ's unexplained conclusion [at step three] of the analysis may be upheld where other portions of the decision and other 'clearly credible evidence' demonstrate that the conclusion is supported by substantial evidence." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (citation omitted).

> As another judge in this District recently explained:
>
> Listing 12.04 covers depressive, bipolar and related disorders. To meet this listing, a claimant's conditions must satisfy the criteria in paragraph A and either paragraph B or C of the listing. Under paragraph A, a finding of depressive disorder requires medical documentation of five or more of the following: depressed mood; diminished interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; observable psychomotor agitation or retardation; decreased energy; feelings of guilt or worthlessness; difficulty concentrating or thinking; or thoughts of death or suicide. Under paragraph B, there must be extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or

> managing oneself. For paragraph C, there must be a medically documented history of the existence of the disorder over a period of at least 2 years, as well as evidence of both medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder and minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

*Julian A. v. Comm'r of Soc. Sec.*, No. 19-CV-1373-FPG, 2021 WL 948046, at *3 (W.D.N.Y. Mar. 12, 2021) (quotations, citations, and alteration omitted). The same paragraph B and paragraph C criteria apply to Listing 12.15, which covers trauma- and stressor-related disorders. *See Jablonski v. Comm'r of Soc. Sec.*, No. 1:18-CV-00597 EAW, 2019 WL 4439453, at *3 (W.D.N.Y. Sept. 13, 2019) ("Paragraphs (B) and (C), under Listings 12.04, 12.06, and 12.15, are identical.").

Here, the ALJ found with respect to the paragraph B criteria that Plaintiff had only moderate limitations in the four relevant areas of mental functioning. (Dkt. 11 at 19-20). Plaintiff has provided a list of evidence as to each of these areas that she asserts supports the conclusion that she has more than moderate limitations. (Dkt. 16-1 at 29-30). However, "whether there is substantial evidence supporting [Plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013); *see also Torres o/b/o J.L.M.C. v. Saul*, No. 19-CV-0072, 2020 WL 3046084, at *5 (W.D.N.Y. June 8, 2020) ("The relevant question is not whether there might be some evidence in the record supporting [the plaintiff's] position, but rather whether substantial evidence supports the ALJ's decision.").

Here, the ALJ appropriately relied on the medical evidence of record and Plaintiff's

own testimony in assessing the paragraph B criteria.  Further, the ALJ's determinations are consistent with Dr. Hartman's opinion, wherein he indicated that Plaintiff had "mild difficulty maintaining attention and concentration," "mild to moderate difficulty learning new tasks," "mild difficulty making appropriate decisions," "moderate difficulty relating adequately with others," and "moderate problems dealing appropriately with the normal stressors of life." (Dkt. 11 at 765).  They are further supported by the March 2018 opinion of Plaintiff's then-treating therapist, licensed master social worker ("LMSW") Daniel Kress.  In that opinion, LMSW Kress indicated that Plaintiff was moderately limited in maintaining attention and concentration, making simple decisions, interacting appropriately with others, and functioning in a work setting at a consistent pace, and had no limitations in understanding and remembering instructions, carrying out instructions, and maintaining socially appropriate behavior without exhibiting behavior extremes.  (*Id*. at 778).  Similarly, in an opinion dated June 27, 2018, LMSW Barbara A. Stager, who had been providing Plaintiff with outpatient mental health treatment, indicated that Plaintiff was "moderately limited" in maintaining concentration and attention and in maintaining socially appropriate behavior without exhibiting behavior extremes, and had no limitations in understanding and remembering instructions, carrying out instructions, making simple decisions, and interacting appropriately with others.  (*Id.* at 780).  On this record, the Court finds the ALJ's assessment of the paragraph B criteria was supported by substantial evidence.

      Plaintiff further argues that the ALJ's decision was internally inconsistent because she found at step three that Plaintiff had only a moderate limitation in her ability to interact

with others, but then concluded in the RFC finding that Plaintiff could tolerate only occasional superficial interaction with supervisors and coworkers, and occasional to no interaction with the public. (*See* Dkt. 16-1 at 33). However, "[i]t is well established that a Step 3 determination is not an RFC assessment, but instead is used to rate the severity of mental impairment. A determination made at Step 3 therefore need not carry over verbatim to the ultimate RFC determination because the two determinations require distinct analysis." *Jay v. Comm'r of Soc. Sec.*, No. 17-CV-59S, 2018 WL 3688315, at *3 (W.D.N.Y. Aug. 3, 2018) (citations omitted). Accordingly, an inconsistency between a step three finding and an RFC finding warrants remand only if it "leaves the Court unable to discern the ALJ's reasoning or reconcile [the] inconsistent findings[.]" *Id.* at *4; *see also Eric G. v. Comm'r of Soc. Sec.*, No. 19-CV-1328-FPG, 2021 WL 972503, at *4 (W.D.N.Y. Mar. 16, 2021).

In this case, the ALJ explained in making her RFC determination that the medical evidence of record, including the opinions discussed above, supported the conclusion that Plaintiff had "no more than moderate limitations in the[] basic areas of mental work functioning[.]" (Dkt. 11 at 25). However, in fashioning an RFC assessment, the ALJ afforded Plaintiff the benefit of the doubt and credited, in part, her testimony regarding her difficulties in interacting socially in a work environment. (*See id*. at 21-22, 159, 162, 169-70). In other words, this is not a case with an unexplained inconsistency between the ALJ's step three finding and her RFC analysis; it is a case in which the ALJ, in fashioning the RFC, exercised her discretion to assess limitations more severe than those supported by the medical evidence of record in deference to Plaintiff's testimony. This does not constitute

reversible error. *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 649 (W.D.N.Y. 2020) ("It appears the ALJ credited Plaintiff's testimony that she could not focus and was easily distracted, and assessed a more generous limitation of 5% off-task time. The fact that the ALJ afforded Plaintiff the benefit of the doubt and included a 5% off-task time limitation in the RFC assessment is not grounds for remand." (internal citation omitted)).

The Court further finds no reversible error in the ALJ's assessment of the paragraph C criteria. As the Commissioner acknowledges, the ALJ's recitation of the paragraph C standard was "imprecise" (Dkt. 18-1 at 21)—in particular, the ALJ suggested that paragraph C requires evidence of "two years of significant or high-level ongoing treatment" (Dkt. 11 at 20), when the standard is actually that a claimant "rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of [his or her] mental disorder." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(G)(2)(b). However, the ALJ then went on to find that Plaintiff's treatment had not been ongoing because she had been "repeatedly discharged from treatment, including for several months at a time, and has been minimally interested in medication." (Dkt. 11 at 20).

As the ALJ explained elsewhere in her decision, in August of 2017, Plaintiff requested a discharge from her mental health treatment because she was doing well and no longer required services. (*Id.* at 23). Further, contrary to Plaintiff's assertion that this cessation of treatment was a symptom of her mental health conditions (*see* Dkt. 16-1 at 34), Plaintiff's medical records indicate that she was discharged from treatment because her goals had been met and her condition was "satisfactory" (Dkt. 11 at 826). Plaintiff did

not return to treatment until March of 2018, after she unexpectedly became pregnant. (*Id*. at 824). This evidence amply supports the ALJ's conclusion that Plaintiff's treatment was not "ongoing" as required by paragraph C, and the ALJ's inartful wording of the applicable standard does not require remand.

### B.  Consideration of NP Rauber's Opinions

The Court turns next to Plaintiff's contention that the ALJ erred in her assessment of NP Rauber's opinion issued in February 2019. Under the Commissioner's regulations applicable to Plaintiff's claim, nurse practitioners are not acceptable medical sources. *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 432 (W.D.N.Y. 2018) ("[N]urse practitioners are not considered 'acceptable medical sources,' and their opinions are therefore not 'entitled to any particular weight.'" (alteration omitted and quoting *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017)). Nevertheless, an ALJ should consider evidence from "other sources," such as nurse practitioners, on important issues like the severity of an impairment and any related functional effects. *See* SSR 06-3p, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). An ALJ may not disregard opinion evidence from a nurse practitioner or "other source" solely because it was not authored by an acceptable medical source. *See Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (holding that ALJ erred in disregarding opinion of social worker simply because it was the opinion of an "other source," and "not on account of its content or whether it conformed with the other evidence in the record"). However, the ALJ "has the discretion to determine

the appropriate weight to accord the [other source]'s opinion based on all the evidence before him[.]" *Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995).

Here, the ALJ explained that NP Rauber had a limited treatment relationship with Plaintiff at the time her opinion was issued and that the statements set forth therein were inconsistent with the other evidence of record regarding Plaintiff's ability to function. These were appropriate reasons for the ALJ to discount NP Rauber's opinion in favor of the other medical opinions of record, including Dr. Hartman's opinion. *See Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (assessments by non-acceptable medical sources "do not warrant the same deference as a physician's opinion."); *Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 1:18-CV-00502 EAW, 2020 WL 1815754, at *5 (W.D.N.Y. Apr. 10, 2020) (finding no error in ALJ's decision to credit opinion of consultative examiner over opinion of non-acceptable medical source).

Plaintiff also makes a cursory argument that the Appeals Council incorrectly failed to consider an opinion issued by NP Rauber on July 12, 2019, after the ALJ had issued her decision. (*See* Dkt. 11 at 60-65; Dkt. 16-1 at 37). The Appeals Council found that this opinion, which was issued after the date of the ALJ's decision, did not relate to the relevant time period. (Dkt. 11 at 7).

The Appeals Council must consider "new" and "material" evidence if it "relates to the period on or before the date of the administrative law judge hearing decision" and there is "reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). Medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely based on timing. *Pollard v. Halter*, 377 F.3d 183, 193

(2d Cir. 2004). "For example, subsequent evidence of the severity of a claimant's condition may demonstrate that 'during the relevant time period, [the claimant's] condition was far more serious than previously thought.'" *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009) (quoting Pollard, 377 F.3d at 193)). However, evidence that does not provide additional information about the claimant's functioning during the relevant time period, but instead relates to his or her functioning at some later point in time, need not be considered by the Appeals Council. *See Vitale v. Apfel*, 49 F. Supp. 2d 137, 142 (E.D.N.Y. 1999) ("While the existence of a pre-existing disability can be proven by a retrospective opinion, such an opinion must refer clearly to the relevant period of disability and not simply express an opinion as to the claimant's current status"). Here, NP Rauber's opinion from July 2019 does not clearly indicate that it was intended to be retrospective, as opposed to a current description of Plaintiff's functioning.

Moreover, even assuming that NP Rauber's opinion referred to the relevant period, any error by the Appeals Council in failing to consider it was harmless. The Appeals Council is not required to consider evidence that is cumulative of the existing evidence of record, such that there is not "a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(b); *see McIntire v. Astrue,* 809 F. Supp. 2d 13, 21 (D. Conn. 2010) ("Evidence that is cumulative to that already contained in the record prior to the ALJ decision is, by definition, not 'new' and need not be considered."). Here, NP Rauber's July 2019 opinion was substantively the same as her February 2019 opinion, which the ALJ had already considered and rejected. Plaintiff has not demonstrated that, on this record, the Appeals Council committed reversible error. *See*

*Voght v. Saul*, No. 18-CV-1435-MJR, 2020 WL 3410837, at *6 (W.D.N.Y. June 19, 2020) (finding Appeals Council's failure to consider second opinion issued by physician harmless where "[the doctor's] second opinion was exactly the same as his first opinion" because "consideration of [the doctor's second] medical source statement would not have caused the Commissioner to decide this case differently").

### C.  Assessment of Dr. Hartman's Opinion

Plaintiff's final argument is that the ALJ did not appropriately explain her assessment of Dr. Hartman's opinion. More specifically, Plaintiff contends that the ALJ improperly gave "great weight" to Dr. Hartman's opinion but then failed, without explanation, to incorporate into her RFC finding Dr. Hartman's statement that Plaintiff had a "fair" ability to maintain a regular schedule. (Dkt. 16-1 at 38). This argument is not persuasive. As Plaintiff acknowledges, "Dr. Hartman fails to define the term 'fair,' and this is not a term regularly used by the agency in assessing the severity of limitations from medical impairments in this context." (*Id.*). It was thus up to the ALJ to determine, based on Dr. Hartman's examination of Plaintiff and the other evidence of record, what "fair" meant in this context. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."). The Court finds no error in the ALJ's conclusion that Dr. Hartman's opinion did not require the imposition of limitations beyond those included in the RFC finding. *See Krystal R. v. Comm'r of Soc. Sec.*, No. 8:20-CV-0513 (ML), 2021 WL 3287776, at *13 (N.D.N.Y. Aug. 2, 2021) ("Plaintiff contends that the RFC determination should have included greater mental limitations regarding time off-task, in

light of Dr. Hartman's opinion that Plaintiff had a fair ability to maintain a regular schedule. However, there is no indication that Dr. Hartman intended to suggest any significant limitations in this area. Therefore, the ALJ's interpretation of Dr. Hartman's opinion was reasonable. . . ." (citations omitted)). Ultimately, it was Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018). The ALJ reasonably concluded that Plaintiff failed to meet her burden in this case as to the need for time off-task or unplanned absences.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 18) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 16) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       September 28, 2021
             Rochester, New York